[No. 21860-3-I.   Division One.   May 22, 1989.]

MICKEY ALAN SINCLAIR, *Appellant,* v. RICHARD V. FLEISCHMAN, ET AL, *as Executors, Respondents.*

*Theodore M. Rosenblume* and *Catherine Ditkoff,* for appellant.

*Robert Egger,* for respondent Richard Fleischman.

*Albert Franco* and *Franco, Asia, Bensussen & Coe,* for respondent estate.

WINSOR, J.—Mickey Alan Sinclair appeals the trial court's dismissal of his creditor's claim against his grandfather's estate for recovery of a proffered gift. He also assigns error to the lower court's assessment of costs and attorney fees incurred by both the attorney for the estate and the attorney for Richard V. Fleischman. We reverse and remand for further proceedings.

In August 1983, Victor Fleischman was judged incompetent, and his son Richard took over the management of his affairs under a durable power of attorney. In December 1984, Richard gifted Victor's six grandchildren with checks for $10,000, drawn on Victor's accounts. Mickey received his check on December 28, 1984, but did not deposit it

because his mother, who was in litigation with Richard over his management of Victor's assets, asked Mickey to wait until she consulted her lawyer.

Mickey last saw the check on January 7, 1985, when he was at his parents' house. The check has never been cashed. Later in January 1985, Mickey told his uncle, Richard, that he had lost the check, and requested a replacement. Richard expressed a willingness to reissue the check, but reissuance was frustrated by the intervening enactment of a statute.[1] Mickey's parents and siblings would not execute written releases requested by Richard to avoid the statute. They contended that the releases were too broad and would have released Richard of all liability for his management of Victor's assets.

Victor died on May 9, 1987. Victor's will appointed Richard and Mickey's father, James Sinclair, as coexecutors. Mickey filed a creditor's claim against Victor's estate for $10,000, plus interest. Richard and James could not agree on the allowance or rejection of the claim: James favored reissuance of the check; Richard favored rejecting the claim. The claim was rejected upon the advice of the lawyer for Victor's estate.

In November 1987, Mickey filed a complaint for the $10,000 against Victor's estate, naming the coexecutors as additional defendants. The estate filed a motion for summary judgment in January 1988 and requested attorney fees. Mickey cross–filed for summary judgment and attorney fees.

The trial court granted the estate's motion for summary judgment, including attorney fees of $8,800.30, representing the fees charged by Richard's and the estate's lawyers in defending against Mickey's claim. Mickey appeals, claiming

---

[1] RCW 11.04.050(1) became effective January 1, 1985. It provides in pertinent part: "the attorney in fact or agent shall not have the power, unless specifically provided otherwise in the document . . . to make any gifts of property owned by the principal". The durable power of attorney under which Richard was acting did not specifically authorize gifting.

that the gift was completed and enforceable against the estate.

■ The requirements for a completed gift are: (1) an intention of the donor to presently give; (2) a subject matter capable of passing by delivery; (3) an actual delivery; and (4) an acceptance by the donee. *Henderson v. Tagg,* 68 Wn.2d 188, 192, 412 P.2d 112 (1966); *In re Estate of Gallinger,* 31 Wn.2d 823, 832, 199 P.2d 575 (1948); 38 C.J.S. *Gifts* § 10 (1943); 38 Am. Jur. 2d *Gifts* § 18 (1968). An incomplete or unexecuted gift confers no right upon the donee; it is unenforceable at law or equity. *Oman v. Yates,* 70 Wn.2d 181, 186–87, 422 P.2d 489 (1967); 38 C.J.S. *Gifts* §§ 10, 16, 62 (1943).

In this case the first two elements are undisputed. Richard and all the heirs agree that a gift of $10,000 was intended. The issues are delivery and acceptance.

### DELIVERY

The delivery requirement is founded on public policy and convenience to prevent mistake, fraud, and perjury. *See generally* 38 C.J.S. *Gifts* § 18 (1943); 38 Am. Jur. 2d *Gifts* § 20 (1968). Actual delivery absolutely and irrevocably divests the donor of present dominion and control over the property, while conferring dominion and control upon the donee. *In re Estate of Hamilton,* 26 Wn.2d 363, 368, 174 P.2d 301 (1946). Delivery may be manual, constructive or symbolic, but it must be as perfect and complete as the nature of the property and the attendant circumstances and conditions will permit. *Old Nat'l Bank & Union Trust Co. v. Kendall,* 14 Wn.2d 19, 25, 126 P.2d 603 (1942); *McCarton v. Estate of Watson,* 39 Wn. App. 358, 364–65, 693 P.2d 192 (1984). No absolute rule can be laid down as to what conduct will constitute a sufficient delivery to support a gift in all cases; whether what was done was sufficient to constitute a delivery will depend on the nature of the property and the attendant circumstances. *See, e.g., McCarton,* 39 Wn. App. at 363–65.

The estate contends that the $10,000 gift was not delivered because the check was not presented to the drawee bank for acceptance and payment. It argues that when a donor uses a check to make a gift, there is no assignment of funds because the donor does not relinquish control of the sum which the check represents. *See* RCW 62A.3–409(1).[2] Delivery of the check will not perfect the monetary gift because the donor could stop payment, withdraw all the funds, or die before payment is made, any of which would revoke the gift. *See generally* 38 C.J.S. *Gifts* §§ 55, 60 (1943); 38 Am. Jur. 2d *Gifts* §§ 65–68 (1968); Annot., *Donor's Own Check as Subject of Gift,* 38 A.L.R.2d 594 (1954); 6 R. Anderson, *Uniform Commercial Code* § 3–409:7 (3d ed. 1984).

Mickey contends that in special circumstances delivery of a donor's check can fulfill the delivery requirement for a gift. *Phinney v. State ex rel. Stratton,* 36 Wash. 236, 78 P. 927 (1904) supports Mickey's contention. In *Phinney,* the severely ill donor gave his friend a check for $4,000 drawn on the donor's bank in another town. The check was sent to the donor's bank, but because the post office miscarried the check, it did not arrive at the bank until after the donor died. 36 Wash. at 238. The friend claimed the money in the bank account was his because of the donor's gift. The State of Washington claimed the funds escheated because a check is not an assignment of funds; thus the gift was not delivered. 36 Wash. at 238–40.

The court ruled that there had been a gift. 36 Wash. at 241, 253. It held that in cases where: (1) the donor's

---

[2]RCW 62A.3–409(1) provides:

"A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."

But, Official Comment 1, RCWA 62A.3–409 provides that:

"As under the original sections, a check or other draft does not of itself operate as an assignment in law or equity. The assignment may, however, appear from other facts, and particularly from other agreements, express or implied; and when the intent to assign is clear the check may be the means by which the assignment is effected."

intent is clear; (2) creditors are not prejudiced; (3) there is no fraud or undue influence; and (4) the check was not cashed before the donor's death because of circumstances beyond the donor's and donee's control, the giving of a check will constitute constructive delivery of the funds. 36 Wash. at 242–43; *accord*, 38 C.J.S. *Gifts* § 19, at 799 (1943) ("Where the intention to make a delivery is clear, and the assignment to carry out that intention has been properly executed, the mere fact that the actual delivery is frustrated, against the will of both parties, by an unsurmountable obstacle will not invalidate the gift.").

All four of the *Phinney* elements are present here. Victor's agent intended to give Mickey a $10,000 gift. (Moreover, Victor's other five grandchildren have all received their $10,000, and all the heirs agree that Victor wished to treat all six grandchildren equally.) There are no allegations of fraud or undue influence. No creditors will be prejudiced if the gift is affirmed. The check was not replaced and cashed before Victor's death because the Legislature altered the statutes governing durable powers of attorney. There are no factual issues as to delivery of the check. We therefore hold that delivery was completed when Mickey received the check.

### ACCEPTANCE

■ Acceptance of a gift is rarely an issue.

While it has been said that the donee has the burden of proving acceptance of the gift during the lifetime of the donor, unless the contrary is made to appear, the acceptance of a gift, beneficial to the donee and otherwise complete, will be presumed, in accordance with the general rule that individuals are presumed to act as their self interest requires . . .

(Footnotes omitted.) 38 C.J.S. *Gifts* § 65(d), at 859 (1943); *accord, State v. Kosai,* 133 Wash. 442, 451, 234 P. 5 (1925). But the presumption that a gift was accepted may be rebutted by evidence to the contrary. *See Dingley v. Robinson,* 149 Wash. 301, 270 P. 1018 (1928) (donee's failure to exercise dominion over the gift items until after the

donor's death was one of the reasons cited for disallowing the gift).

The estate contends that even if there was a valid delivery, the gift was still not complete because it was not accepted. It argues that Mickey did not manifest an unconditional acceptance of the proffered gift because he did not immediately cash the check, and after he lost the check he did not obtain the releases he was told were required before a new check could be issued.

It is true that Mickey did not immediately cash the check, at his parent's request, but whatever hesitation Mickey initially showed about accepting the gift, his subsequent undisputed actions conclusively demonstrate his acceptance of the gift. Mickey made repeated verbal and written requests for a new check, and requested releases from his family members to satisfy Richard's demands. *Cf. PUD 1 v. WPPSS*, 104 Wn.2d 353, 365, 705 P.2d 1195, 713 P.2d 1109 (1985). Moreover, delay in acceptance is not critical.

> It is immaterial whether delivery and acceptance are contemporaneous, or which precedes the other. *Acceptance need not be immediate*; it is sufficient if the gift is accepted before revocation by death or otherwise.

(Footnotes omitted. Italics ours.) 38 C.J.S. *Gifts* § 29, at 807–08 (1943); *accord,* 38 Am. Jur. 2d *Gifts* § 34 (1968). We hold that the gift was accepted.

Having determined that the gift was delivered and accepted, and thus completed, we reverse the trial court's order granting summary judgment and attorney fees to the estate. The case is remanded to the superior court with directions to enter summary judgment in favor of Mickey, and to determine Mickey's trial level attorney fees.

Mickey requested attorney fees on appeal, but counsel has not complied with RAP 18.1. Specifically, she has not submitted an affidavit in support of the fee request, nor did she ask for fees during oral argument. We therefore deny this request.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

PEKELIS and FORREST, JJ., concur.

Reconsideration denied September 6, 1989.

Review denied at 113 Wn.2d 1032 (1989).